UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANGELA PICKETT, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   No. 1:20-cv-01218-JRS-DML |
| | ) |
| TARGET CORPORATION, | ) |
| | ) |
|     Defendant. | ) |

**Order on Motion for Summary Judgment**

On October 28, 2019, Angela Pickett slipped and fell near a display refrigerator in the grocery section of a Target store in Muncie, Indiana.  She sued Target Corporation ("Target") in state court for damages to compensate her for the injuries she sustained in the fall.  Target removed the action to the Court under 28 U.S.C. §§ 1441 and 1446, asserting diversity jurisdiction under 28 U.S.C. § 1332.  Target now moves for summary judgment.  (ECF No. 27.)  The only issue before the Court is whether Target had actual or constructive knowledge of the dangerous condition that led to Pickett's injuries.  For the following reasons, Target's motion is granted.

### I.  Background

On October 28, 2019, Pickett entered a Target store in Muncie, Indiana, to pick up her order of kitty litter and purchase a can of soup.  (Pickett Dep. 16:11–14, ECF No. 28-1 at 3; Royer Aff. ¶ 2, ECF No. 28-2 at 1.)  After notifying an employee at the counter that she would be back to pick up her to-go order of kitty litter, Pickett walked directly toward the grocery section of the store, known as the "Market Area."  (Pickett

Dep. 17:14–18:2, ECF No. 28-1 at 4–5; Royer Dep. 16:4–8, ECF No. 40-2 at 4.) Pickett slipped and fell near a refrigerator immediately upon entering an aisle in the meat section. (Pickett Dep. 19:1–2, ECF No. 40-1 at 3; Royer Dep. 34:7–12, ECF No. 40-2 at 13.) She injured her elbow and knees. (Pickett Dep. 26:4–5, ECF No. 40-1 at 5.) Pickett believes she slipped on a "wet, slippery substance," but she did not see it and has no idea what the substance was, or how much of it may have been on the floor, and she has no idea how the substance got there. (Pickett Dep. 19:1–20:12, ECF No. 40-1 at 3–4.) Picket did not notice any of the substance on her shoes or clothing. (*Id.* 20:8-12.)

Zachary Royer, Food Sales Associate, worked in the Market Area. (Royer Dep. 14:10–14, 16:6–8 ECF No. 40-2 at 3, 4.) As part of his general duties assigned to the Market Area, he ordered food, unloaded the food truck, and stocked perishable goods in the refrigerators. (*Id.* at 14:15–25, 22:4–23, 24:19–25, ECF No. 40-2 at 3, 8, 10.) The Market Area is prone to having spills or hazards on the floor. (*Id.* at 16:12–15, ECF No. 40-2 at 4.) On two occasions, once in the middle of 2019 and again at the end of 2020, Royer noticed the refrigerator, located at the entrance to the meat aisle of the Market Area, leak. (Royer Dep. 35:3–21, ECF No. 40-2 at 14.) Royer was working in the Market Area on the day of Pickett's fall. (*Id.* at 23:1, ECF No. 40-2 at 9.) Prior to her fall, Royer had been stocking goods in the freezer section and had last been working in the aisle in which Pickett fell approximately ten to fifteen minutes prior to her fall and he observed no foreign substance(s) on the floor. (*Id.* at 23:2–11,

2

ECF No. 4-2 at 9; Royer Aff. ¶ 5, ECF No. 28-2 at 1; *cf.* Royer Dep. 44:14–16, 50:1–3, ECF No. 40-2 at 17, 23.)

Target's surveillance camera recorded Pickett's fall. (Royer Dep. 34:7–21, ECF No. 40-2 at 13; *cf.* ECF No. 40-3.) However, the camera did not capture footage of Royer, who was at the time working in the refrigerator section, out of frame. (Royer Dep. 64:19–65:5, ECF No. 40-2 at 29.) Royer came to Pickett's assistance one to two minutes after she fell. (Pickett Dep. 22:2, ECF No. 28-1 at 9; Royer Aff. ¶ 3, ECF No. 28-2 at 1.) After Royer helped her up, Pickett, in severe pain, grabbed a can of soup and made her way to the checkout counter where she asked to fill out an incident report. (Pickett Dep. 29:1–9, 40:15–16, ECF No. 28-1 at 14, 16.) Royer inspected the area where the fall occurred after Pickett got up; he saw no substance on the floor. (Royer Aff. ¶ 6, ECF No. 28-2 at 1–2.)

## II.  Legal Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of production. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). That initial burden consists of either "(1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citing *Modrowski*, 712 F.3d at 1169). If the movant discharges its initial burden, the

burden shifts to the non-moving party, who must present evidence sufficient to establish a genuine issue of material fact on all essential elements of his case. *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). But the Court must also view the evidence "through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

### III. Discussion

The Court applies Indiana substantive law because this is a diversity case. *See Austin v. Walgreen Co.*, 885 F.3d 1085, 1088 (7th Cir. 2018). Pickett alleges that she was injured due to a condition on Target's premises—a wet, slippery substance located at the base of a display refrigerator. It is undisputed that Pickett was a business invitee at Target when she was injured.

Under Indiana premises-liability law, a landowner owes a duty to "exercise reasonable care for the invitee's protection while the invitee is on the premises." *Rogers v. Martin*, 63 N.E.3d 316, 320 (Ind. 2016); *see also Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012) (landowner owes business invitees "a duty to exercise reasonable care for their protection while they remained on the premises"). "The best definition of this duty comes from the Restatement (Second) of Torts § 343 (1965)," which provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Burrell v. Meads*, 569 N.E.2d 637, 639–40 (Ind. 1991). Each of these elements must be present for a landowner to be liable under a premises-liability theory. *See Rogers*, 63 N.E.3d at 322.

The first element as to knowledge of the dangerous condition requires that the landowner have "actual or constructive knowledge of a condition on the premises that involves an unreasonable risk of harm to invitees." *Pfenning v. Lineman*, 947 N.E.2d 392, 406 (Ind. 2011); *see also Schulz*, 963 N.E.2d at 1144 ("[B]efore liability may be imposed on the invitor, it must have actual or constructive knowledge of the danger."). Pickett does not dispute Target's argument and evidence that it had no actual knowledge of the allegedly dangerous condition. (*See* Pl.'s Mem. Law Opp'n Def's Mot. Summ. J. 6 (arguing the evidence shows Target had constructive knowledge), *id.* at 12 (asserting issues of fact exists as to Target's constructive knowledge), ECF No. 39.) Therefore, the only issue in this case is whether Target had constructive knowledge that the wet, slippery substance was on the floor and created an unreasonable risk of harm to its invitees.

Indiana courts have found constructive knowledge where a condition "has existed for such a length of time and under such circumstances that it would have been

5

discovered in time to have prevented injury if the storekeeper, his agents or employees had used ordinary care." *Schulz*, 963 N.E.2d at 1144 (quoting *Wal-Mart Stores, Inc. v. Blaylock*, 591 N.E.2d 624, 628 (Ind. Ct. App. 1992)). For example, in *Schulz*, a customer slipped on a clear liquid in the defendant's store. A store employee stated in her affidavit that she had been in the area where the alleged fall occurred about five to ten minutes before the alleged fall and, during that time, she did not observe any foreign substance or potential hazard on the floor; the floor was clean and dry. *Id.* at 1144–45. Given that the floor was clean and dry no more than ten minutes before the customer's fall, the court held that the store lacked constructive knowledge of the hazardous condition. *Id.* at 1145; *see also Robinson v. Kroger Co.*, No. 1:13-cv-00605, 2014 WL 340587, at *5 (S.D. Ind. July 10, 2014) (no constructive knowledge where area had been inspected less than ten minutes before accident); *Williams v. Meijer, Inc.*, No. 1:12-cv-510, 2013 WL 3146981, at *1, 3 (S.D. Ind. June 18, 2013) (no constructive knowledge where area had been inspected seven to twelve minutes before accident).

Pickett offers no evidence to establish that the wet, slippery substance had been on the floor long enough before her fall and under such circumstances that Target should have discovered it before it allegedly caused Pickett's fall. Instead, to show Target had constructive knowledge, Pickett argues that (1) Royer submitted a "false affidavit," and (2) the wet, slippery substance was a recurring dangerous condition of which Target had actual notice.

Pickett's challenges to Royer's credibility are insufficient to avert summary judgment. Pickett takes issue with Royer's affidavit—specifically, the portion where Royer stated he "had been working in the area of [Pickett's] fall approximately 10-15 minutes prior to the fall . . . ." (Royer Aff. ¶ 5, ECF No. 28-2 at 1.) Pickett boldly asserts that "after taking Royer's deposition, [she] now know[s] that Royer's Affidavit is false, misleading at best[.]" (ECF No. 39 at 10.) Pickett spends several pages of her response challenging Royer's credibility, pointing to instances in which she believes Royer's deposition contradicted his affidavit. (*E.g.*, ECF No. 39 at 5–6, 8–10.) However, "[c]riticizing the credibility of the movant's affiants, alone, is not enough to avoid summary judgment." *Waldon v. Wal-Mart Stores, Inc.*, 943 F.3d 818, 823 (7th Cir. 2019). Indeed, "when challenges to witness' credibility are *all* that a plaintiff relies on, and [s]he has shown no independent facts—no proof—to support [her] claims, summary judgment in favor of the defendant is proper." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (emphasis in original). Because Pickett solely relies on challenging Royer's credibility, she has not shown that Target had constructive knowledge of a dangerous condition.

Furthermore, Pickett fails to establish that Target had constructive knowledge by suggesting that it had actual notice of a recurring dangerous condition. Applying Indiana law, the Seventh Circuit has held that "proof of constructive knowledge to a possessor of land of the existence of a dangerous condition is properly accomplished where it is shown that the specific condition at issue, though transitory, is a part of a known and continuing or recurrent condition." *Hetzel v. Jewel Cos.*, 457 F.2d 527,

530 (7th Cir. 1972), *overruled on other grounds by United States v. Hollinger*, 553 F.2d 535 (7th Cir. 1977). That is, "*actual notice of a recurring dangerous condition* which is left uncorrected is sufficient under Indiana law upon the recurrence of the condition to justify a finding of liability against a defendant whose duty it was to protect against the danger." *Id.* at 531 (emphasis added).

Here, Royer testified that he was aware the refrigerator near the area where Pickett was injured leaked on two occasions—once in the middle of 2019 and once at the end of 2020. (Royer Dep. 35:3–21, ECF No. 40-2 at 14.) Pickett argues that this one leak in 2019, prior to her fall, and one leak in 2020, after her fall, is evidence that Target had actual notice of a recurring dangerous condition.

Pickett cites to *Hetzel* and *Lauray v. Menard, Inc.*, No. 1:16-cv-00929, 2018 WL 1124566, at *1 (S.D. Ind. Mar. 1, 2018), to support her assertion that Target had constructive knowledge of the wet, slippery substance because it had actual notice of a recurring dangerous condition. In *Hetzel*, the plaintiff slipped and fell on meat juice near a meat counter in the butcher's section of a grocery store. 457 F.2d at 528. During the trial, the store's employees testified that on more than one occasion and "occasionally" liquid leaked out of packages onto the floor by the meat counter. *Id.* at 530–31. The Seventh Circuit concluded that the jury could have inferred from the evidence "that the liquid on the floor in front of the meat counter was a recurrence of the condition of accumulations of liquid matter at that location and that the defendant had actual notice of the recurring condition." *Id.* at 534.

In *Lauray*, the plaintiff tripped over a mat near the entrance to the store. 2018 WL 1124566, at *1. The evidence showed that employees knew that mats bunched up and created a tripping hazard, that it was general knowledge that shopping carts would cause mats to "pull up," that multiple people had been seen tripping over the mats, and that employees had a duty to watch for the mats bunching up at the entrance and exit of the store. *Id.* at *6. Based on that evidence, the court found that a reasonable trier of fact could find that the defendant had actual notice of a recurring dangerous condition involving the mat. *Id.* at *6.

*Hetzel* and *Lauray* are distinguishable from this case, however. In *Hetzel*, the evidence established that the leaks occurred on more than one occasion and occasionally. Thus, the leaks were recurrent. And in *Lauray*, the mats bunching up was also recurrent—so much so that employees had a duty to watch for the mats bunching up and then straighten them out. Here, in contrast, the evidence is that the refrigerator near the area where Pickett fell leaked only *once* before her accident. Royer testified that the leak occurred in mid-2019—Pickett was injured on October 28, 2019. The refrigerator that leaked once months before Pickett's accident is not comparable to the mats in *Lauray* that were known to regularly bunch up and trip customers. Nor is a single leak comparable to the liquid that leaked on more than one occasion in *Hetzel* or even to the spills in the freezer section of Meijer that occurred "regularly throughout the day" in *Williams v. Meijer,* 2013 WL 3146981, at *1–2 (stating the evidence established "a pattern of dangerous conditions"). Indeed,

9

Target did not have actual notice of a recurring refrigerator leak—namely, because a single occurrence is antithetical to a recurrence.

Moreover, to the extent Pickett argues that Target had notice of the allegedly wet, slippery substance because the refrigerators in the Market Area are more prone to having spills or hazards, that argument also fails. As in *Williams*, Pickett identifies no evidence to suggest that Target did not attend to the spills within a reasonable amount of time. *See id.* at *3. Instead, Pickett only attacked Royer's credibility, which was insufficient to avert summary judgment. *See supra.* Even if the Court were to put aside Royer's testimony that an inspection of the area shortly before and immediately after the fall revealed no evidence of a wet substance, Pickett herself testified she has no idea what the substance was, how long it had been there, or even where it came from. (Pickett Dep. 19:1–20:12, ECF No. 40-1 at 3–4.) So, there is no evidence that a leak from the refrigerator even occurred in this instance.

Because Pickett fails to present any evidence to raise a reasonable inference that Target had actual notice of a recurring dangerous condition, the Court finds that she cannot establish that Target had constructive knowledge of the allegedly wet, slippery substance that caused Pickett's fall. Accordingly, Pickett's premises liability claim against Target fails as a matter of law, because the record contains no evidence that Target had knowledge of the allegedly dangerous condition. Target is entitled to summary judgment on Pickett's claim.

10

## IV.  Conclusion

For the above reasons, Target's Motion for Summary Judgment, (ECF No. 27), is **granted**.  Judgment will issue separately.

**SO ORDERED.**

Date: 8/12/2021

                                            JAMES R. SWEENEY II, JUDGE
                                            United States District Court
                                            Southern District of Indiana

Distribution by CM/ECF to all registered counsel of record